**UNITED STATES of America,**
**Appellee,**

v.

**Allen Lester SCHULTHEIS, Appellant.**

**No. 72–2517.**

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 14, 1973.

Decided Nov. 8, 1973.

Joseph B. Benedetti, Richmond, Va. (Court-appointed) (Minor, Thompson, Savage, Smithers & Benedetti, Richmond, Va. on brief) for appellant.

David E. Holt, Jr., Sp. Atty., U. S. Dept. of Justice (George Beall, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and FIELD and WIDENER, Circuit Judges.

FIELD, Circuit Judge:

This appeal involves the construction of Title 18 U.S.C. App. § 1202(a)(1) which proscribes the possession, receipt or transportation in commerce of a firearm by any person who "has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony." "Felony" is defined in Title 18 U.S.C. App. § 1202(c)(2) as any "offense punishable by imprisonment for a term exceeding one year, but does not include any offense (other than one involving a firearm or explosive) classified as a misdemeanor under the laws of a State and punishable by a term of two years or less." As the district judge noted, this definition may permit the curious situation in which a felony is not a "felony," but a misdemeanor is. Such a situation is presented in this case.

I

In March, 1972, the Grand Jury for the District of Maryland returned a three count indictment charging appellant with violation of Title 18 U.S.C. App. § 1202(a)(1) in that he received, transported and possessed in commerce firearms after having been convicted of a "felony" in a Municipal Court of Baltimore City, Maryland. The "felony" conviction upon which the indictment was based was appellant's 1966 conviction of simple assault, a common law crime in Maryland, which grew out of appellant's involvement in a fist fight. For this crime appellant was given a suspended 90-day sentence, fined $25.00

and placed on unsupervised probation for two years.

At trial counsel stipulated that appellant had received firearms in commerce, that he had been convicted of simple assault, and that the district court might "take judicial notice of the fact that the crime of assault in Maryland may be punishable by a term in prison in excess of two years." No distinction was made in the last stipulation between the possible punishment for simple assault and the permissive punishment for various aggravated assaults which are made felonies by statute in Maryland. Article 27, Section 12, Annotated Code of Maryland. A jury trial having been waived, the district judge found appellant guilty on all counts and sentenced him to four months in prison to be followed by twenty months probation.

Appellant assigns as error the district court's refusal to look to the actual punishment imposed in his 1966 conviction as the maximum legal sentence for purposes of Title 18 U.S.C. App. § 1202(c)(2). This refusal, appellant argues, is contrary to Congressional intent and denied him equal protection of the law by imposing restrictions on his right to bear arms different from those imposed on citizens of Pennsylvania and North Carolina where simple assault is punishable by not more than two years. Without intimating any view as to the merits of appellant's equal protection argument, we accept his first contention and reverse.

II

The sharp delineation of "felony" provided by Title 18 U.S.C. App. § 1202(c)(2) obviously anticipated easy reference to the criminal statutes of the various states for the determination that a conviction was or was not a "felony." Unfortunately, the Maryland law of simple assault provides no such easy reference and the punishment for the common law misdemeanor of simple assault is limited only by the ban against cruel and unusual punishment. As the court

stated in Gleaton v. State, 235 Md. 271, 277, 201 A.2d 353, 356 (1964),

"[t]here is, however, in this State no statutory limitation on the penalty which may be imposed for simple assault, and there was none at common law. Heath v. State, 198 Md. 455, 467, 85 A.2d 43 (1951); Apple v. State, 190 Md. 661, 668, 59 A.2d 509 (1948). Nor do we construe the penal limits imposable for the statutory assaults as implying a legislative policy to confine sentences for common law assault to not more than those prescribed for the statutory assaults. Statutes in derogation of the common law are strictly construed, and it is not to be presumed that the legislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced. Dwarris on Statutes, 695. The matter of imposing sentences is left to the sound discretion of the trial court, and the only restraint on its power to fix a penalty are the constitutional prohibitions against cruel and unusual penalties and punishment found in Articles 16 and 25 of the Maryland Declaration of Rights."

Additionally, the determination that a given sentence transgresses the limits of cruel and unusual punishment depends upon the facts of the particular case. In Heath v. State, *supra*, 198 Md. at 467, 85 A.2d at 49, the court noted the following language approvingly:

"In 2 Bishop, *Criminal Law*, (9th ed.) p. 32, it is said: 'Still, from early times, when misdemeanors were punished by whatever fine or imprisonment the judge might deem it right to impose, it has been the judicial habit to look upon assaults as more or less aggravated by such attendant facts as appealed to the discretion for a heavy penalty. * * * An assault is deemed to be more or less enormous according to the facts of the particular case.' "

The recitation by the Government of decisions affirming punishment of sim-ple assault ranging from five to twenty years is thus of little relevance to this case absent a showing that those cases involved substantially identical degrees of aggravation. No such showing is possible since it appears that in each case cited the defendant, in addition to the charge of simple assault, was charged with a statutory assault with intent to kill, maim or rape. Roberts v. Warden, 242 Md. 459, 219 A.2d 254 (1966); Austin v. Director, 237 Md. 314, 206 A.2d 145 (1965); Gleaton v. State, *supra*; Adair v. State, 231 Md. 255, 189 A.2d 618 (1963); Burley v. State, 226 Md. 94, 172 A.2d 394 (1961); and Shields v. State, 224 Md. 485, 168 A.2d 382 (1961). While the defendants in these cases were not convicted of the more serious charges, it is clear that the seriousness of the assaults affected the sentences imposed. To accept those authorities as guidelines in this case for an evaluation of the Maryland law of simple assault would be fallaciously simplistic. It would blindly lump into the same category the most trivial and the most heinous assaults, thereby defeating the clear Congressional desire to exclude minor transgressions of the law from the sweep of Title 18 U.S.C. App. § 1202(c)(2).

### III

At the very least the application of 18 U.S.C. App. § 1202(a)(1) to a common law conviction exposes a latent ambiguity in that otherwise unambiguous statute. While the statute speaks clearly of the statutory convictions to which it will apply, it is silent regarding its application to common law convictions. This silence is subject to two inferences: (1) that every common law conviction with discretionary punishment is a "felony" without regard to the seriousness of the crime or the actual punishment imposed, or (2) that the seriousness of the crime, as evidenced by the actual sentence imposed, should control its classification as a "felony" for purposes of Title 18 U.S.C. App. § 1202(c)(2). The first is more harsh than the treatment of those statu-

tory crimes for which the punishment does not exceed two years, while the second is, of course, more lenient. As to the correct inference to be drawn, the legislative history is unenlightening.

In United States v. Bass, 404 U.S. 336, 344, 92 S.Ct. 515, 520, 30 L.Ed.2d 488 (1971), the Supreme Court characterized Title 18 U.S.C. App. §§ 1201–1203 (Title VII) as "a last-minute Senate amendment to the Omnibus Crime Control and Safe Streets Act. The Amendment was hastily passed, with little discussion, no hearings and no report." Title VII's sponsor, Senator Long of Louisiana, conceived the bill to be aimed at actual felons, even though "felony" was defined originally as "any offense punishable by imprisonment for a term exceeding one year." On May 17, 1968, Senator Long declared that "[w]e do not want the murderers, the burglars, the rapists, the looters, or the arsonists armed to the teeth and walking the streets. We do not want the habitual criminals who have committed all sorts of crimes armed and presenting a hazard to law abiding citizens." 114 Cong.Rec. 13868 (1968). These thoughts were reiterated on May 23, 1968, *Id.* at 14773. Senators Dodd, McClellan and Dominick all stated their belief that the bill went too far in certain respects, particularly the provisions outlawing possession of guns by persons "discharged from the Armed Forces under other than

honorable conditions," *Id.* at 14774–75. Despite their request for more study, the bill was quickly brought to a vote and passed. The only discussion of Title VII in the House of Representatives was a summary endorsement by Mr. Pollock, Id. at 16298. Clearly, the subtleties presented by application of Title VII to a common law conviction were not contemplated by the Congress in June, 1968.

Nor does it appear that such a possibility was contemplated in September, 1968, when Congress amended Title VII to its present form. The Conference Report,[1] like the plain language of the statute, evidences a desire to proscribe possession of firearms by felons and certain designated misdemeanants. However, there is no indication that the Congress anticipated the inclusion therein of one, such as the appellant in this case, convicted of what, in fact, was a minor common law crime the punishment for which is at best only vaguely defined.

The Supreme Court noted in United States v. Bass, *supra*, 404 U.S. at 347, 348, 92 S.Ct. at 522, that

"In various ways over the years, we have stated that 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spo-

---

[1]. Conference Report No. 1956, 1968 U.S. Code Cong. & Ad.News, p. 4434. AMENDMENT TO TITLE VII OF THE OMNIBUS CRIME CONTROL AND SAFE STREETS ACT OF 1968.
*Definition of "felony."*—The Senate amendment contained a provision not in the House bill redefining the term "felony" in section 1202(c)(2) of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968—relating to unlawful possession or receipt of firearms. That term was defined to mean, in the case of State law, an offense determined by the laws of the State to be a felony. The conference substitute defines that term as any offense punishable by imprisonment for a term exceeding 1 year, but does exclude from the definition any offense

(other than one involving a firearm or explosive) classified as a misdemeanor under the laws of a State and punishable by a term of imprisonment of 2 years or less.
*Veterans not barred from receiving, possessing or transporting firearms unless dishonorably discharged.*—The House bill contained a provision, not in the Senate version, which changed a provision in title VII of the Omnibus Crime Control and Safe Streets Act of 1968 barring veterans discharged under "other than honorable conditions." The effective date of the House provision was made to coincide with the enactment date of title VII (June 19, 1968). The conference substitute contains the provisions of the House bill.

ken in language that is clear and definite.' \* \* \* (citations omitted) This principle is founded on two policies that have long been part of our tradition. First, 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.' \* \* \* (citations omitted) Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.' \* \* \* Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."

██ In view of the breadth of common law simple assault as applied by the courts of Maryland, we conclude that the seriousness of the crime as evidenced by the actual sentence imposed should control whether or not a conviction for such a crime should be classed as a "felony" for purposes of Title 18 U.S.C.App. § 1202(c)(2). In our opinion this conclusion accords with the legislative purpose and better serves the ends of justice. Considering the nature of the assault and the minimal punishment imposed, we do not think appellant's Maryland conviction was properly classified as a "felony" within the meaning of the federal statute.[2] Accordingly, the conviction is reversed.

Reversed.

---

**2.** Our opinion, of course, is not to be read as precedent that the punishment imposed be utilized as the criteron for the classification of crimes that do not have the peculiar characteristics of Maryland's common law simple assault.