914 F.2d 475
 NATIONAL RIFLE ASSOCIATION, a not for profit corporation;
South Carolina Shooting Association, a not for profit
corporation; Greenville Gun Club, a corporation; Palmetto
Gun Club, a not for profit association; Robley Moore;
William P. Goodman; California Rifle and Pistol
Association, a not for profit corporation; Texas State
Rifle Association, a not for profit association; Unified
Sportsmen of Florida, a not for profit association,
Plaintiffs-Appellants,
v.
Nicholas F. BRADY, Secretary, Department of the Treasury;
Stephen E. Higgins, Director of Bureau of Alcohol, Tobacco
and Firearms, U.S. Department of Treasury, in his official
capacity, Defendants-Appellees.
 No. 89-3345.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 2, 1990.
Decided Sept. 13, 1990.
Rehearing and Rehearing In Banc
Denied Oct. 11, 1990.
 
 Stephen Porter Halbrook (argued), Fairfax, Va., for plaintiffs-appellants.
 Ira C. Lupu, Civ. Div., U.S. Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Michael Jay Singer, Mark B. Stern, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Jack B. Patterson, Imelda Koett, Bureau of Alcohol, Tobacco and Firearms, Washington, D.C., on the brief), for defendants-appellees.
 Before SPROUSE and WILKINSON, Circuit Judges, and GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 WILKINSON, Circuit Judge:
 
 
 1
 In this case, we must determine the validity of certain firearms regulations promulgated by the Secretary of the Treasury pursuant to the Gun Control Act of 1968, Pub.L. No. 90-618, as amended by the Firearm Owners Protection Act of 1986, Pub.L. No. 99-308, presently codified at 18 U.S.C. Secs. 921 et seq. The National Rifle Association, along with several other groups and individuals involved with the use and promotion of firearms, challenges the regulations as inconsistent with the Firearm Owners Protection Act. The district court upheld all four regulations at issue here as compatible with the statutory mandate. We hold that two of the four regulations are consistent with the terms of the statute, that the third regulation is in part consistent but in part inconsistent with the statute, and that the fourth regulation is inconsistent with the plain language of the statute. Accordingly, we affirm in part and reverse in part the judgment of the district court.
 
 I.
 
 2
 Congress passed the Gun Control Act of 1968 in order to regulate interstate firearms transactions, primarily through licensing requirements on firearms businesses. Licensees may include importers, manufacturers, dealers, and collectors of firearms. The Secretary of the Treasury was authorized to promulgate regulations to facilitate the enforcement of the Gun Control Act. This responsibility was delegated within the Department of the Treasury to the Bureau of Alcohol, Tobacco and Firearms (BATF).
 
 
 3
 In 1986, Congress passed the Firearm Owners Protection Act, Pub.L. No. 99-308 (FOPA), which amended several provisions of the Gun Control Act. FOPA was designed to protect the legitimate interests of firearms owners "while preserving the necessary statutory foundation for legitimate law enforcement efforts." S.Rep. No. 98-583, 98th Cong., 2d Sess. 1 (1984).[1] It was intended to reduce the regulatory burden on law-abiding owners of firearms without eviscerating BATF's effectiveness in combatting violations of the firearms laws.
 
 
 4
 After passage of FOPA, the Secretary of the Treasury initiated a comprehensive review of all regulations implementing the Gun Control Act and issued temporary regulations, effective November 15, 1986, for the enforcement of the amended Act. Some of the temporary regulations were merely repromulgations of regulations which the Secretary had issued prior to the passage of FOPA, while others were new in content. In addition, the Secretary issued a Notice of Proposed Rulemaking requesting comments on the temporary regulations. BATF received over 1500 written comments, including those of the National Rifle Association (NRA) and other interested parties. BATF refused the request of certain of these parties for an oral hearing. On March 31, 1988, the Secretary published the regulations in their final form.
 
 
 5
 On September 29, 1988, the NRA, six other gun associations, a gun show promoter, and a gunsmith (hereinafter collectively referred to as the NRA) filed suit challenging several of the newly published regulations as contrary to FOPA. They also contended that the Gun Control Act ensured an opportunity for an oral hearing, which had not been afforded them by BATF. On cross-motions for summary judgment, the district court upheld all but one of the challenged regulations and ruled that the NRA was not entitled to an oral hearing.
 
 The NRA appeals.[2]
 II.
 
 6
 We must first address the appropriate standard of review to govern our examination of the regulations at issue. In the usual challenge to an agency's construction of a statute it administers, our review is conducted according to the standards set forth in Chevron, U.S.A., Inc. v. NRDC, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its progeny. The Supreme Court has made plain that "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43, 104 S.Ct. at 2781. If, on the other hand, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. at 2782; see also Motley v. Heckler, 800 F.2d 1253, 1254-55 (4th Cir.1986) ("[W]here Congress has entrusted an agency with implementation of a statutory scheme, that agency's interpretation of the statutory terms is entitled to substantial deference."). Thus, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency," Chevron, 467 U.S. at 844, 104 S.Ct. at 2782, but instead must uphold the agency's interpretation as long as it is "rational and consistent with the statute." NLRB v. United Food & Commercial Workers, 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987); see also Sullivan v. Everhart, --- U.S. ----, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990).
 
 
 7
 Here, however, the NRA contends that through an amendment to the Gun Control Act contained in FOPA Congress intended to restrict severely BATF's ability to promulgate regulations and to dispense with the deference that courts would customarily accord those regulations. Prior to passage of FOPA, the Gun Control Act's enabling provision stated that "[t]he Secretary may prescribe such rules and regulations as he deems reasonably necessary to carry out the provisions of this chapter." FOPA amended this provision to read: "The Secretary may prescribe only such rules and regulations as are necessary to carry out the provisions of this chapter...." 18 U.S.C. Sec. 926. The NRA argues that the change of language in the enabling provision evinces a congressional intent to eliminate most of the regulations adopted by BATF, preserving only those that are truly necessary to further the purposes of the Gun Control Act. The NRA also points to a number of statements in the legislative history of FOPA by individual members of Congress in support of its interpretation of the significance of the change of language in Sec. 926. Thus, the NRA maintains that we should not defer to BATF's interpretation of the Gun Control Act as manifested in its regulations, but rather should strike down the regulations if we do not find them strictly necessary and the least restrictive means of accomplishing the purposes of the Act.
 
 
 8
 The change in language in Sec. 926 surely counsels BATF not to stray from the directives of the statute, but it is not of the decisive import that the NRA contends. Under the NRA's reading of the amended Sec. 926, it would be the courts, and not BATF, that would have responsibility to determine when a regulation is "necessary" to carry out the purposes of the Gun Control Act. The amended language, however, retains the regulatory function in the Secretary. It does not divest him of his primary role in the implementation of this legislation. BATF, moreover, is better equipped than the courts for such an endeavor, having the technical expertise essential to determinations of statutory enforcement. See Wilson v. Lyng, 856 F.2d 630, 636 (4th Cir.1988). Also, BATF, as opposed to the courts, is "in a position to provide nationally uniform interpretations of statutory terms." Id. Because Sec. 926 authorizes the Secretary to promulgate those regulations which are "necessary," it almost inevitably confers some measure of discretion to determine what regulations are in fact "necessary." Absent a clearer message from Congress that it wishes courts to replace BATF in this role, we are hesitant to work a fundamental alteration in the relationship between the agency and the courts.
 
 
 9
 The argument that BATF retains statutory discretion to promulgate regulations is bolstered by the specific grants of rulemaking authority in a number of the areas implicated by this litigation. FOPA specifically provides that a licensee "shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Secretary may by regulations prescribe." 18 U.S.C. Sec. 923(g)(1)(A). Similarly, 18 U.S.C. Sec. 923(g)(2) provides that "[e]ach licensed collector shall maintain in a bound volume the nature of which the Secretary may by regulations prescribe, records of the receipt, sale, or other disposition of firearms." Finally, 18 U.S.C. Sec. 923(j) directs that licensees may temporarily conduct business at gun shows and other events "under rules or regulations prescribed by the Secretary." Such grants of authority make it unlikely that Congress intended in its amendment of Sec. 926 to displace the deference generally due an agency charged by Congress with implementing its directives.
 
 
 10
 Finally, the Report of the Senate Judiciary Committee, which introduced the change in Sec. 926, explained that deletion of "reasonably" from the enabling provision was merely intended to remove redundant language:
 
 
 11
 Section 106 of S. 914, as reported, amends 18 U.S.C. 926, which deals with rules and regulations.... Sections 106(2) and (3) provide that the Secretary shall promulgate only such regulations as are necessary (as opposed to the redundant "reasonably necessary") to carry out the provisions of the Gun Control Act.
 
 
 12
 S.Rep. 98-583, 98th Cong., 2d Sess. 27 (1984). Although such legislative history is rarely conclusive, a Committee Report, which "represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation," Zuber v. Allen, 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969), is not to be subordinated to the statements of individual members of Congress. For all of the above reasons, it remains difficult to conclude that the alteration in Sec. 926 was intended to install the courts as primary arbiters of regulatory necessity or that the principles of Chevron do not apply to this litigation.[3]
 
 
 13
 With these principles in mind, we shall proceed to address in turn each of the challenged regulations.III.
 
 A.
 
 14
 Since its original passage in 1968, the Gun Control Act has required that in order to obtain a license to conduct business, a firearms importer, manufacturer, or dealer must have "premises from which he conducts business." 18 U.S.C. Sec. 923(d)(1)(E)(i). FOPA did not eliminate this requirement, which exists so that regulatory authorities will know where the inventory and records of a licensee can be found. In 1968, the Secretary promulgated a regulation defining the term "business premises" as used in the statute. See 33 Fed.Reg. 18,557 (December 14, 1968). The relevant portion of that regulation remains unchanged after FOPA. It specifies that "[a] private dwelling, no part of which is open to the public, shall not be recognized as coming within the meaning of the term." 27 C.F.R. Sec. 178.11.
 
 
 15
 The NRA argues that this regulation is contrary to 18 U.S.C. Sec. 923(d)(1)(E)(i). It contends that "business premises" is a self-defining term, the definition of which simply is any place where a licensee does business, whether that place be open to the public or not. Thus, the NRA maintains, the regulation is an impermissible expansion on the requirement in the statute. The NRA also complains that the regulation will interfere with activities such as gunsmithing or brokering between licensees which might occur at a private dwelling not open to the public.
 
 
 16
 We cannot agree that "business premises" is a self-defining term. While the definition argued for by the NRA is probably the broadest possible meaning of the term, the definition provided in the BATF regulation is quite reasonable. To define "business premises" so as to except private dwellings not open to any member of the public comports with a common understanding of the term. Additionally, the requirement of some minimal public access has the benefit of creating a locus which defines the business to customers and facilitates regulators' inspection of the licensee's inventory and records. Thus, we think the Secretary has defined an undefined and ambiguous term in the statute in a reasonable manner. See Chevron, 467 U.S. at 844, 104 S.Ct. at 2782.
 
 
 17
 In addition, the regulation need not impinge on activities such as gunsmithing or brokering between licensees in a private dwelling. Contrary to the NRA's contention, the regulation does not require licensees who work out of private dwellings simply to throw open their homes to the general public or even to observe regular business hours. BATF rulings make clear that licensees need only open that portion of their homes in which they do business and only "to the clientele that the business is set up to serve." ATF Rul. 73-13, 1973 ATF C.B. 92. Thus, licensees need not fear that their homes will be transformed into public thoroughfares. The promulgation of 27 C.F.R. Sec. 178.11 is a valid exercise of the Secretary's power, and is reasonable and consistent with 18 U.S.C. Sec. 923(d)(1)(E)(i).
 
 B.
 
 18
 FOPA provides that a licensee may conduct business temporarily at "a gun show or event sponsored by any national, State, or local organization ... devoted to the collection, competitive use, or other sporting use of firearms in the community." 18 U.S.C. Sec. 923(j). This provision is an exception to the general rule that licensees may only conduct business from their "business premises." After passage of FOPA, the Secretary promulgated a regulation defining "gun show or event" as follows:
 
 
 19
 A gun show or an event is a function sponsored by any national, State, or local organization, devoted to the collection, competitive use, or other sporting use of firearms, or an organization or association that sponsors functions devoted to the collection, competitive use, or other sporting use of firearms in the community.
 
 
 20
 27 C.F.R. Sec. 178.100.
 
 
 21
 The NRA again contends that the Secretary has impermissibly defined a self-defining term in the statute. It argues that the term "gun show" is self-defining, and means simply a display of firearms in a civic building or similar location, whereas the term "event" needs qualification. From this argument, it follows that the "sponsored by" clause in the statute refers only to the term "event," and not to the term "gun show." Thus, according to the NRA, the Secretary has misinterpreted 18 U.S.C. Sec. 923(j) by requiring that "gun shows" and "events," rather than only "events," be sponsored by one of the types of sponsoring organizations listed in the statute.
 
 
 22
 We think it uncertain as a matter of syntax whether the "sponsored by" clause refers only to "events" or to both "gun shows" and "events." In such a situation, a court must defer to the agency's regulation so long as it is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843, 104 S.Ct. at 2782. The regulation at issue here is a permissible construction of 18 U.S.C. Sec. 923(j). Since a modifying phrase may apply to one or both of the two preceding nouns separated by an "or," it is reasonable to conclude from the structure of the statutory language that "gun show" as well as "event" is modified by the term "sponsored by." Moreover, it is questionable whether "gun show" could fairly be described as a self-defining term. To consider it such, the Secretary argues, would create significant problems of statutory interpretation and enforcement. For example, any licensee seeking to evade the general rule that firearms business must be conducted from "business premises" could simply designate his temporary display of firearms a "gun show" rather than an "event" and thereby remove himself from the statute. We think it reasonable that the Secretary would interpret the "sponsorship" requirement to apply to both "gun shows" and "events," and to prevent vitiation of the "business premises" requirement.
 
 C.
 
 23
 Prior to the passage of FOPA, licensed firearms dealers were required to record the sale or other disposition of firearms held in both their business inventories and their personal collections. See United States v. Endicott, 803 F.2d 506, 510-11 (9th Cir.1986); United States v. Currier, 621 F.2d 7, 9 (1st Cir.1980). Initially, FOPA altered this scheme by providing that, with respect to their personal collections, licensees need only comply with those restrictions applicable to any other person who disposes of a firearm. The statute read as follows:
 
 
 24
 Nothing in this chapter shall be construed to prohibit a licensed manufacturer, importer, or dealer from maintaining and disposing of a personal collection of firearms, subject only to such restrictions as apply in this chapter to dispositions by a person other than a licensed manufacturer, importer, or dealer. If any firearm is so disposed of by a licensee within one year after its transfer from his business inventory into such licensee's personal collection or if such disposition or any other acquisition is made for the purpose of willfully evading the restrictions placed upon licensees by this chapter, then such firearm shall be deemed part of such licensee's business inventory.
 
 
 25
 Pub.L. No. 99-308, section 103(4). Concerned that the statute as written might contain a loophole through which licensees could dispose of firearms from their personal collections without leaving any records, Congress amended the statute on July 8, 1986, by appending the following language to the end of the prior formulation of the statute:
 
 
 26
 except that any licensed manufacturer, importer, or dealer who has maintained a firearm as part of a personal collection for one year and who sells or otherwise disposes of such firearm shall record the description of the firearm in a bound volume, containing the name and place of residence and date of birth of the transferee if the transferee is an individual, or the identity and principal and local places of business of the transferee if the transferee is a corporation or other business entity: Provided, That no other recordkeeping shall be required.
 
 
 27
 Pub.L. No. 99-360, section 1(c), presently codified together with Pub.L. No. 99-308, section 103(4), at 18 U.S.C. Sec. 923(c).
 
 
 28
 Thus, 18 U.S.C. Sec. 923 requires that licensees keep two sets of record books: Sec. 923(g)(1)(A) requires that they maintain a business bound book in which to record receipt and disposition of firearms in the business inventory, and Sec. 923(c) requires that they maintain a personal bound book in which to record disposition of personal firearms. The Secretary has implemented these statutory requirements in a number of regulations. The Sec. 923(g)(1)(A) requirement that licensees keep a business bound book is implemented through 27 C.F.R. Sec. 178.125(e), which provides:
 
 
 29
 [E]ach licensed dealer shall enter into a record each receipt and disposition of firearms. In addition, before commencing or continuing a firearms business, each licensed dealer shall inventory the firearms possessed for such business and shall record same in the record required by this paragraph.
 
 
 30
 The Sec. 923(c) requirement that licensees keep a personal bound book is implemented through 27 C.F.R. Sec. 178.125a, as follows:
 
 
 31
 [A] licensed manufacturer, licensed importer, or licensed dealer is not required to record on a firearms transaction record, Form 4473, the sale or other disposition of a firearm maintained as part of the licensee's personal firearms collection: Provided, That (1) the licensee has maintained the firearm as part of such collection for 1 year from the date the firearm was transferred from the business inventory into the personal collection or otherwise acquired as a personal firearm, (2) the licensee recorded in the bound record prescribed by Sec. 178.125(e) the receipt of the firearm into the business inventory or other acquisition, (3) the licensee recorded the firearm as a disposition in the bound record prescribed by Sec. 178.125(e) when the firearm was transferred from the business inventory into the personal firearms collection or otherwise acquired as a personal firearm, and (4) the licensee enters the sale or other disposition of the firearm from the personal firearms collection into a bound record, under the format prescribed below....
 
 
 32
 The NRA asserts that taken together, 27 C.F.R. Sec. 178.125(e) and 27 C.F.R. Sec. 178.125a improperly expand upon 18 U.S.C. Sec. 923. It contends that the regulations create recordkeeping requirements where none were contemplated by the statute with respect to transactions in which a licensee sells a firearm from his personal collection which he obtained either before he was a licensee or as a nonlicensee. The NRA maintains that no recordkeeping whatsoever is required for transactions involving such firearms, but only for those transactions involving personal firearms transferred from the business collection.
 
 
 33
 We disagree. We think the Secretary's interpretation of the statute as reflected in the regulations is a permissible one. While the language of the statute may be ambiguous as to whether the requirement that licensees record transactions involving personal firearms held for one year refers to all personal firearms of a licensee or only to those personal firearms transferred from a dealer's business collection, it is not unreasonable for the Secretary to conclude that the requirement applies to the former. The regulations are consistent with the purpose of the statutory provision. The regulations require that licensees record the purchase of all firearms in their business bound books, and that they then record in their business bound books the transfer of any firearms to their personal collections. They also require that licensees demonstrate that personal firearms obtained before licensing have been held at least one year prior to their disposition as personal firearms. The regulations ensure that firearms kept in the personal collection are bona fide personal firearms, and they minimize the opportunity for licensees to evade the statute's recordkeeping requirements for business firearms by simply designating those firearms "personal firearms" immediately prior to their disposition. In addition, the recordkeeping requirements contained in the regulations provide a means for the Secretary to verify that personal firearms were actually held for a year by a licensee prior to sale. Thus, we think the regulations at issue here are both "rational and consistent with the statute." United Food & Commercial Workers, 484 U.S. at 123, 108 S.Ct. at 421.
 
 
 34
 The NRA also complains that the Secretary has by regulation required that licensees record in their personal bound books information not called for by 18 U.S.C. Sec. 923(c). The statute specifies that a licensee
 
 
 35
 shall record the description of the firearm in a bound volume, containing the name and place of residence and date of birth of the transferee if the transferee is an individual, or the identity and principal and local places of business of the transferee if the transferee is a corporation or other business entity: Provided, That no other recordkeeping shall be required.
 
 
 36
 18 U.S.C. Sec. 923(c). The information that the Secretary requires be recorded is specified in 27 C.F.R. Sec. 178.125a(4):
 
 
 37
 [T]he licensee enters the sale or other disposition of the firearm from the personal firearms collection into a bound record, ... showing the date of the sale or other disposition, the name and address of the transferee, or the name and license number of the transferee if such person is a licensee, and the date of birth of the transferee if other than a licensee. In addition, the licensee shall cause the transferee, if other than a licensee, to be identified in any manner customarily used in commercial transactions (e.g., a drivers license), and shall note on the record the method used.
 
 
 38
 We agree with the NRA that the regulation is invalid to the extent it requires licensees to record information not called for by the statute. The regulation requires licensees to record in their personal bound book the license number of the transferee if the transferee is a licensee, and the method of identification used if the transferee is a nonlicensee. This information is not required to be recorded by the statute. To the contrary, the statute explicitly provides that "no other recordkeeping shall be required" other than that specified in the statute. As a matter of policy, one might conclude that the identity of an individual can best be ascertained through a driver's license or, in the case of a licensee, a license number. However, Congress explicitly indicated that the place of residence and date of birth of an individual transferee and the business addresses of a corporate transferee were to constitute the appropriate means of identification for purposes of a licensee's personal collection. Clearly, in other sections of the statute Congress knew how to grant the Secretary authority to promulgate reasonable regulations with respect to numerous transactions in firearms. See, e.g., 18 U.S.C. Secs. 923(g)(1)(A), (g)(2), (j). These sections, however, deal with transactions involving firearms contained in business collections. In the specific section dealing with firearms contained in personal collections, Congress forbade the imposition of additional recordkeeping by the Secretary. Congress could hardly have been more clear in its direction that "no other recordkeeping shall be required." While the information requested in the regulation may well be beneficial to BATF in its efforts to track firearm dispositions, the plain language of the statute makes clear that this is information that Congress did not wish licensees to be required to record. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781. The regulation is therefore invalid to the extent it requires that licensees record these additional items not specified in 18 U.S.C. Sec. 923(c).[4]
 
 
 39
 Thus, we uphold the requirement in 27 C.F.R. Sec. 178.125a that licensees record the receipt and disposition of all firearms in their personal collections, but invalidate that portion of the regulation requiring licensees to record additional information not called for by the statute.
 
 D.
 
 40
 FOPA directs that licensed collectors maintain "records of the receipt, sale, or other disposition" of curio and relic firearms. 18 U.S.C. Sec. 923(g)(2). To implement this statutory provision, the Secretary promulgated a regulation requiring that licensed collectors record the receipt and disposition of curio and relic firearms, and that
 
 
 41
 [i]n addition, before commencing or continuing a firearms curio or relic collection, each licensed collector shall inventory the curios or relics possessed in such collection and shall record same in the record required by this paragraph.
 
 
 42
 27 C.F.R. Sec. 178.125(f).
 
 
 43
 The NRA complains that this regulation imposes additional recordkeeping requirements on licensed collectors that were not contemplated by the statute. It argues that the statute only requires that licensed collectors record the receipt or disposition of curios and relics, but that the regulation impermissibly expands on this requirement by insisting that licensed collectors record all curios and relics already in their possession when they acquire their licenses.
 
 
 44
 We agree that 27 C.F.R. Sec. 178.125(f) impermissibly expands on the requirements of the statute. The statute makes no mention of any requirement that licensed collectors inventory their preexisting collections and record their contents. Rather, it makes clear that records need only be kept concerning the receipt and disposition of curios and relics. The Secretary's regulation creates a whole new recordkeeping requirement above and beyond the requirements provided for by the plain language of the statute.
 
 
 45
 The Secretary protests that when a collector is issued a collector's license, he may be deemed to have "received" those curios and relics already in his possession. This argument for a sort of "constructive receipt" stretches the language of the statute "to the breaking point." FCC v. American Broadcasting Co., 347 U.S. 284, 294, 74 S.Ct. 593, 600, 98 L.Ed. 699 (1954). "Receipt" and "possession" simply do not have the same meaning. This court and others have recognized in similar contexts that the two terms are not synonymous. See United States v. Goerlich, 729 F.2d 1168, 1170 (8th Cir.1984); United States v. Burton, 629 F.2d 975, 977 (4th Cir.1980). The Secretary's interpretation would change the statute from one that focuses upon transactions in firearms to one that focuses on simple possession. To insist that a collector maintain records of the curios and relics already in his possession before he obtains a license, as does 27 C.F.R. Sec. 178.125(f), is thus to place a gloss on the statute which is not supported by the statute's plain language. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32, 107 S.Ct. 1207, 1217, 94 L.Ed.2d 434 (1987).
 
 
 46
 The Secretary also contends that to strike down this regulation would interfere with his ability to assure accurate accounting of a collector's curios and relics. He points out that if licensees are not required to record firearms already in their possession when they acquire their licenses, it will be difficult for BATF inspectors to determine whether the collector properly recorded each firearm disposed of and whether such firearms were disposed of lawfully. While the Secretary may accurately depict the enforcement problems that invalidation of this requirement may create, courts are simply not at liberty to ignore the plain language of the statute. The policy arguments forwarded by the Secretary with respect to enforcement "should be directed to the Congress rather than to [the courts]." McCulloch v. Sociedad Nacional, 372 U.S. 10, 22, 83 S.Ct. 671, 678, 9 L.Ed.2d 547 (1963). Because the statute requires only that licensed collectors record the receipt, sale, or other disposition of curios and relics, and not that they inventory and record curios and relics already in their possession, 27 C.F.R. Sec. 178.125(f) is invalid.
 
 IV.
 
 47
 The NRA finally contends that all of the regulations must be invalidated because the Secretary failed to follow the procedures mandated in FOPA by refusing to afford interested parties an opportunity for an oral hearing.
 
 
 48
 FOPA contains no provision guaranteeing interested parties the right to an oral hearing. Instead, it provides:
 
 
 49
 The Secretary shall give not less than ninety days public notice, and shall afford interested parties opportunity for hearing, before prescribing such rules and regulations.
 
 
 50
 18 U.S.C. Sec. 926(b). It is well-settled that the requirement of a hearing does not necessitate that the hearing be oral. See United States v. Florida East Coast Ry. Co., 410 U.S. 224, 238-42, 93 S.Ct. 810, 817-19, 35 L.Ed.2d 223 (1973); A.T. & T. v. FCC, 572 F.2d 17, 22 (2d Cir.1978). Here, the Secretary, pursuant to regulation, reserved for himself the right to determine whether an oral hearing should be held. See 51 Fed.Reg. 39,635. He ultimately determined that an oral hearing was unwarranted, but did provide interested parties with the opportunity to submit written comments. This is all the hearing requirement in Sec. 926(b) demands.
 
 
 51
 The NRA points to the fact that the Secretary conducted a public oral hearing in 1968 soon after enactment of the Gun Control Act, and argues that this demonstrates that the Secretary believed that an oral hearing was mandated by the Act. We are not persuaded. That the Secretary may once have chosen to accord parties additional procedural rights by holding an oral hearing "does not carry the necessary implication that [he] felt [he] was required to do so." Florida East Coast Ry., 410 U.S. at 236 n. 6, 93 S.Ct. at 816-17 n. 6. The choice to provide an oral hearing on one occasion does not bind the Secretary to continue to do so in the future. Thus, we hold that the Secretary complied with the hearing requirement of Sec. 926(b) by permitting interested parties to submit written comments on the proposed regulations.
 
 V.
 
 52
 For the foregoing reasons, we hold that the regulations defining "business premises" and "gun show" are rational and consistent with the Gun Control Act as amended, and are therefore valid exercises of the Secretary's rulemaking authority. Likewise, the regulation requiring that licensees maintain records concerning the receipt and disposition of their personal firearms, and not merely those personal firearms transferred from their business inventories, is also reasonable and proper; however, to the extent that regulation requires licensees to record information not specified in the statute, the regulation is invalid. The regulation directing licensed collectors not only to record the receipt, sale, or other disposition of curio and relic firearms, but also to inventory and record all curio and relic firearms already in their possession when they obtained their licenses, is inconsistent with the plain language of the statute and is to that extent invalid. Thus, the judgment of the district court is affirmed in part and reversed in part.
 
 
 53
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 [1]
 There was no Senate Report on Pub.L. No. 99-308. S.Rep. No. 98-583 accompanied S. 914, the substantially similar predecessor to S. 49, the Senate bill which was the basis for Pub.L. No. 99-308
 
 
 [2]
 The government does not appeal the district court's invalidation of that portion of 27 C.F.R. Sec. 178.11 defining the term "manufacture."
 
 
 [3]
 The NRA also suggests that BATF's power to promulgate regulations is limited by the fact that the Gun Control Act is a criminal statute. The NRA contends that the rule which directs that ambiguity in criminal statutes be resolved in favor of lenity requires the invalidation of all regulations that do not adopt the narrowest possible construction of the Act. Many of the cases, however, on which the NRA relies in making this argument involve the application of the rule of lenity in criminal prosecutions and are simply inapposite to questions of deference to agency regulations. See United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); United States v. Headspeth, 852 F.2d 753 (4th Cir.1988); United States v. Schultheis, 486 F.2d 1331 (4th Cir.1973). In addition, while it is possible that willful violation of the regulations at issue here might lead to criminal prosecutions, the regulations are in the main licensing requirements, and the government properly notes that any disputes over their scope or meaning are far more likely to arise in contests over license application, renewal, or revocation than in a criminal courtroom. The usual level of deference is therefore appropriate
 
 
 [4]
 The regulation also contains a requirement that licensees record the date of sale of firearms from their personal collections. While recordation of the date of sale is not explicitly listed as a recordkeeping requirement in the statute, it is inherent in the statute's requirement that sales be recorded that the date of sale also be specified. The requirement of 27 C.F.R. Sec. 178.125a(4) that licensees record the date of sale of personal firearms in their personal bound books is therefore consistent with the language of 18 U.S.C. Sec. 923(c)