**COALITION OF NEW YORK STATE CARRIER SCHOOLS, INC.,**
Plaintiff,

v.

**Richard W. RILEY, Secretary of Education, in his official capacity, Defendant.**

No. 94–CV–1493.

United States District Court,
N.D. New York.

Jan. 6, 1995.

Davidoff & Malito (Matthew Feigenbaum, of counsel), New York City, for plaintiff.

Thomas J. Maroney (Thomas Spina, Jr., of counsel), United States Attorney, Albany, NY, U.S. Dept. of Educ., Office of General Counsel (Steven Z. Finley, of counsel), Washington, DC, for defendant.

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

This action stems from regulations promulgated by the United States Secretary of Ed-

ucation in response to the directives set forth in the financial aid programs under Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1091(b), et seq. (HEA). Plaintiff is an association of trade schools licensed to operate in New York State. Plaintiff maintains that the regulations as promulgated are illegal as they conflict with, are an unreasonable interpretation of, and improperly amend and modify the statute in question. Plaintiff further asserts that the regulations are a violation of the equal protection and due process rights of its member schools and the students who attend them, as they treat trade schools who operate in states with a refund policy such as New York differently from those schools which operate in states which do not have a refund policy. Plaintiff seeks a declaration of this court that these regulations are illegal, and further seeks to have an injunction issue prohibiting the Secretary of Education from enforcing these regulations.

Plaintiff maintains it is entitled to a preliminary injunction as it will suffer irreparable harm if forced to comply with the Refund Regulations. Plaintiff asserts that the refunds as calculated under the regulations conflict with the requirements of the statute concerning such refunds, thus exceeding the authority of the Secretary to promulgate regulations in this area and placing the schools in the untenable situation of having to refund monies they have already earned, and looking to their students for reimbursement. Plaintiff maintains that there is little to no likelihood of the students having access to such funds, as if they did, they would not qualify for much of the financial aid available under HEA, and would have already paid any outstanding monies owed. Thus, plaintiff asserts its member schools will suffer irreparable harm as a result of these regulations as the loss of revenues will have a negative impact upon the schools' ability to maintain their high quality of education, resulting in a loss of reputation and good will. Additionally, plaintiff asserts that because the regulations contain criminal penalty provisions, plaintiff faces even greater irreparable harm as a result of potential criminal prosecution, and because of those criminal sanctions, the regulations should be held to a stricter standard of review.

Defendant maintains that the prior decision as to the validity of these regulations in *Career College Association v. Riley,* No. 94 Civ. 1372, 1994 WL 454713 (D.D.C. Aug. 9, 1994), is res judicata of the issues raised by plaintiff, and that this court should dismiss the current action. Defendant asserts that some of the schools which are members of the plaintiff were also members of the association plaintiff in the D.C. action and thus are bound by that court's determination upholding the regulations.

Defendant contends there is no equal protection claim under the regulations as all schools and their students are treated alike, and the refund is determined by the largest of the state or federal refund policy. Finally, defendant opposes the request for preliminary injunction and asserts that plaintiff has erroneously interpreted the statute and the regulations. Defendant maintains that the regulations are in full accord with the directives of the statute, and that the only appropriate question before this court is whether the agency's interpretation is based on a permissible construction of the statute. Defendant asserts that if the refund calculations are made in accordance with the practices espoused by plaintiff, then the federal government is picking up more than its anticipated share of the costs incurred by the students. Defendant further asserts that because the criminal penalty provisions are not the main purpose, the regulations are entitled to the high level of deference traditionally afforded any other agency regulations.

Defendant further asserts that there is no irreparable harm in this action, as any harm alleged is purely speculative and mere financial harm is insufficient to merit the drastic remedy of injunctive relief. Defendant maintains plaintiff has made no showing as to student withdrawal rate, or the financial condition of its member schools so as to demonstrate the alleged irreparable impact of the regulations. Defendant asserts that if there is any harm at all, it is harm to the students if the regulations are not upheld because if the schools do not repay the loans under the

HEA, the students would have a greater amount of outstanding debt.

■ Looking first to the issue of res judicata, there must be an identity of parties before res judicata will be applied to a subsequent litigation. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). An association which adequately represents the collective interests of its membership in litigation and is vested with the authority of representation will bind its membership. *Alpert's Newspaper Delivery v. New York Times Co.,* 876 F.2d 266 (2d Cir.1989) (*citing, Expert Electric v. Levine,* 554 F.2d 1227, 1233 (2d Cir.1977)). The principle of res judicata will not apply however, to members of an organization which were not shown to have been effectively represented in prior litigation. *Viceroy Gold Corp. v. Aubry,* 858 F.Supp. 1007, 1018 (N.D.Cal.1994). The burden is upon the defendant to show that the prior suit involves the same parties or their privies. *G & T Terminal Packaging v. Consolidated Rail Corp.,* 719 F.Supp. 153, 157 (S.D.N.Y.1989) (*citing, NLRB v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983). Defendant has merely alleged that some of plaintiff's members may have been members of the association plaintiff in the prior litigation in the District of Columbia.

■ Defendant offers nothing further to support its allegation that plaintiff was a party or privy to such litigation, that plaintiff authorized or masterminded such litigation, nor that plaintiff had the requisite degree of control over such litigation to require application of the doctrine of res judicata. This court finds that there has not been the requisite showing that all members of plaintiff, or even a substantial majority, were party to the prior litigation. Thus plaintiff is not barred from maintaining this action by the prior decisions already issued in this area.[1]

As recently reiterated by the Second Circuit, "[t]o obtain a preliminary injunction, a plaintiff must demonstrate: (1) *either* a likelihood that he will succeed on the merits of his claim, *or* that the merits present serious questions for litigation and the balance of hardships tips decidedly toward the plaintiff; and (2) that without the injunction, he will likely suffer irreparable harm before the court can rule upon his claim." *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 122 (2d Cir.1994) (citations omitted).

■ Defendant challenges the plaintiff's assertion of irreparable harm, claiming such harm to be merely financial, and as such inadequate to sustain a showing of irreparable injury. However, the loss of good will, coupled with potential financial ruin constitutes sufficient irreparable harm to justify issuance of a preliminary injunction. *Roso–Lino Distrib. v. Coca–Cola Bottling Co.,* 749 F.2d 124, 125 (2d Cir.1984); *Travellers Intern. AG v. Trans World Airlines,* 684 F.Supp. 1206, 1216 (S.D.N.Y.1988). Additionally, faced with potential criminal prosecution, plaintiff has undoubtedly met the standard of demonstrating sufficient irreparable harm to justify issuance of an injunction. *See, Abbott Laboratories v. Gardner,* 387 U.S. 136, 153–54, 87 S.Ct. 1507, 1517–18, 18 L.Ed.2d 681 (1967).

■ Looking to the merits of plaintiff's claims, this court must next determine if plaintiff has demonstrated a likelihood of success on the merits, or sufficiently serious questions going to the merits and a balance of hardship in plaintiff's favor, before an injunction will issue. It is imperative in determining the validity of the Secretary's regulations that they be evaluated under established standards of review.[2]

When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions. First,

---

1. Defendant offers no reason why it is not bound by the determination in *California Cosmetology Coalition v. Riley,* 871 F.Supp. 1263 (C.D.Cal. 1994), preliminarily enjoining enforcement of these same regulations, having clearly been a party to such action.

2. This court does not agree with plaintiff's assertion that the potential for criminal penalties requires application of the rule of lenity in construing the regulations. *See, National Rifle Ass'n. v. Brady,* 914 F.2d 475, 479–80 n. 3 (4th Cir.1990) (main purpose of regulation is licensing, rule of lenity in criminal prosecutions simply inapposite to questions of deference to agency regulations).

always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694, 702–03 (1984) (citations omitted). As a general rule legislative regulations are given controlling weight unless they are determined to be arbitrary, capricious or manifestly contrary to the purpose of the statute. *Id.,* at 843, 104 S.Ct. at 2781–82. The question is not whether the decision of the agency to regulate in a particular fashion is appropriate in light of the statutory scheme, but rather, whether the agency's view is a reasonable one in the context of the particular program. *Id.,* at 845, 104 S.Ct. at 2783.

The purpose of the Higher Education Assistance Act, 20 U.S.C. § 1001, et seq., is to support programs for low-income and disadvantaged students, allowing for expansion of the availability of such programs, and safeguarding the financial integrity of the schools which provide such programs. *See,* 20 U.S.C. §§ 1001, 1051 (1989, Supp.1994). Requiring schools to provide for a fair and equitable refund policy of monies paid by both the student and the state and federal governments advances these goals by insuring the preservation of available funds when such money is not expended by the schools.

The statute at issue in this action provides that those schools whose students receive federal Higher Education Assistance "shall have in effect a fair and equitable refund policy under which the institution refunds unearned tuition, fees, room and board, and other charges to a student who received grant or loan assistance ..." 20 U.S.C. § 1091b(a)

The institution's refund policy **shall be considered to be fair and equitable** for purposes of this section if that policy provides for a refund in an amount of at least the largest of the amounts provided under—

(1) the requirements of applicable State law;

(2) the specific refund requirements established by the institution's nationally recognized accrediting agency and approved by the Secretary; or

(3) the pro rata refund calculation described in subsection (c) of this section ...

20 U.S.C. § 1091b(b) (emphasis added).[3]

Pro rata refund is defined in subdivision (c)(1) of the statute as:

not less than that portion of the tuition, fees, room and board, and other charges assessed the student by the institution equal to the portion of the period of enrollment for which the student has been charged that remains on the last day of attendance by the student, rounded downward to the nearest 10 percent of that period, less any unpaid charges owed by the student for the period of enrollment for which the student has been charged, and less a reasonable administrative fee not to exceed the lesser of 5 percent of the tuition, fees, room and board, and other charges assessed the student, or $100.

20 U.S.C. § 1091b(c)(1). Thus Congress has clearly spoken directly on the issue of the necessity of a refund policy. Plaintiff asserts that the regulations as promulgated by the Secretary improperly amends the statute to effect the amount of any refund required from those schools located in states which have refund policies.

The statute provides that schools must refund the larger of either the state refund

---

3. For purposes of this action, there is no nationally recognized accrediting agency, and subsection (2) has no application.

policy or the federal pro rata refund policy. 20 U.S.C. § 1091b(b). The federal pro rata refund policy is defined to deduct any unpaid charges owed by the student from the funds which must be refunded. 20 U.S.C. § 1091b(c). The Secretary's regulations provide that institution making calculations under the state formula, must deduct from the amount that they may retain, the unpaid amount of a scheduled cash payment, thereby increasing the amount of the calculated refund.[4] Such a requirement is nowhere present in the statute, and is not justified under any interpretation thereof. Congress having specifically spoken to the comparison required as to the varying formulas, requiring schools to refund the larger of those calculations, there is no authority for the Secretary to now modify that formula to increase the amount of a calculation under the state formula. Had Congress intended such a result, it would have placed such a calculation in the statute, as it has already done in the pro rata calculation under 20 U.S.C. § 1091b(c). The refund statute itself recognizes that there is a point in time where a student dropping out of a program leaves the school in the situation of having already expended what is the equivalent of the full tuition cost.[5] Thus the impact of the Secretary's refund regulations is to improperly modify the statute.

Application of the refund regulations as promulgated by the Secretary negates the goals of increasing accessibility for the programs sought to be encouraged under the HEA. If a refund policy is to be fair and equitable, it is not merely fair and equitable to students, but also to schools, and to the goals of the Act. Further the statute specifically provides that a refund policy "shall be considered to be fair and reasonable if that policy provides for a refund in an amount of at least the largest of the amounts provided" under state law, the accrediting agency, or the pro rata calculation of § 1091b(c). *See,* 20 U.S.C. § 1091b(b). As noted by Judge Gadbois in his November 21, 1994 decision on these same regulations, there is no basis for implying inclusion of unpaid charges in refund calculations where there is nothing in the statute to indicate as such. The clear language of § 1091b(b) and (c) indicates that Congress did not leave such matters to the discretion of the Secretary. *See, California Cosmetology Coalition v. Riley,* 871 F.Supp. 1263, 1271–72 (C.D.Cal.1994).[6]

4. The relevant regulations provide in pertinent part:

... (3) The institution must determine which policy under paragraph (b)(1) of this section provides for the largest refund to that student.

(4) For all refund calculations **other than the pro rata refund calculation under paragraph (b)(1)(iii)** of this section, an institution must subtract the **unpaid amount of a scheduled cash payment from the amount the institution may retain** in accordance with paragraph (f)(2) of this section.

(c) Pro Rata refund. (1) "Pro rata refund," as used in this section, means a refund by an institution to a student attending that institution for the first time of not less than that portion of the tuition, fees, room, board, and other charges assessed the student by the institution equal to the portion of the period of enrollment for which the student has been charged that remains on the withdrawal date, rounded downward to the nearest 10 percent of that period, **less any unpaid amount of a scheduled cash payment** for the period of enrollment for which the student has been charged.

(2) A "scheduled cash payment" is the **amount of institutional charges that is not paid for by financial aid for the period of enrollment for which the student has been charged** ...

(3) The "unpaid amount of a scheduled cash payment" is computed by **subtracting the amount paid by the student for the period of enrollment for which the student has been charged from the scheduled cash payment** for the period of enrollment for which the student has been charged ...

34 C.F.R. 668.22 (June 1994) (emphasis added).

5. "this paragraph will not apply to the institution's refund policy for any student whose date of withdrawal from the institution is after the 60 percent point (in time) in the period of enrollment for which the student has been charged." 20 U.S.C. § 1091b(b)(3).

6. This court is aware that Judge Hogan of the District Court for the District of Columbia ruled that having set forth a reasoned basis for promulgating these same regulations, the Secretary was entitled to substantial deference as promulgating such regulations in implementing the HEA. *Career College Association v. Riley, supra,* slip op. at 28. This court is of the opinion that Congress has specifically spoken on this issue, and that the Secretary has exceeded his authority in promulgating these regulations. As such, this court respectfully disagrees with the decision of the D.C. District Court.

Having determined that the Secretary has exceed his authority in promulgating the refund regulations under the statute, the likelihood of success on plaintiff's claim is strong.[7] Even assuming the likelihood of success was not as apparent, looking to serious questions on the merits and balancing the hardships, the schools clearly suffer a severe economic hardship as well as a detrimental impact upon their programs and goodwill if the regulations are enforced as written. Thus the hardship visited upon the schools through these regulations demonstrates that even if there were questions as to the merits of plaintiff's claims, the balance would tip decidedly in plaintiff's favor.

In the current situation, it does not appear that the agency's regulatory scheme for refund calculation is a permissible one in the context of the Higher Education Assistance program and under the purposes of the Higher Education Assistance Act. Additionally, the regulations as promulgated contradict the plain language of the statute, and as such exceed the authority of the Secretary to act in this arena. As such the Secretary should be preliminarily enjoined from enforcing the refund regulations as promulgated under 34 C.F.R. § 668.22.

---

7. The merits of plaintiff's equal protection claim are not clear at this time. This claim need not be addressed at the current juncture however, in light of the determination that Secretary has exceeded his authority in promulgating the refund regulations.