**RSM, INC. dba Valley Gun of Baltimore, et al.,**
**Plaintiff**

**v.**

**Bradley A. BUCKLES, Director, Bureau of Alcohol, Tobacco and Firearms, Defendant.**

**No. CIV. A. MJG–00–759.**

United States District Court, D. Maryland.

April 13, 2000.

---

Stephen Halbrook, Fairfax, VA, for RSM, Inc.

Christopher Allan Conte, Silver Spring, MD, Stephen Halbrook, Fairfax, VA, for Sanford Abrams.

Roann Nichols, Office of the U.S. Atty., Baltimore, MD, Sandra M. Schraibman, Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Lynne A. Battaglia, U.S. Atty., Baltimore, MD, for Bradley A. Buckles.

GARBIS, District Judge.

### MEMORANDUM OF DECISION

This case was tried before the Court without a jury. The Court has heard the evidence, reviewed the exhibits, considered the materials submitted by the parties, and had the benefit of the arguments of counsel. The Court now issues this Memorandum of Decision as its findings of fact and conclusions of law in compliance with Rule 52(a) of the Federal Rules of Civil Procedure.

### I. *BACKGROUND*

Since at least 1991 the Abrams family has operated a business trading as "Valley Gun of Baltimore," selling, among other

things, firearms and related items. Until 1996, Valley Gun was a sole proprietorship of Mr. Melvin Abrams. In 1996, upon Melvin Abrams' death, RSM, Inc. ("RSM"), a Maryland corporation owned by his son, Sanford Abrams, has continued the business operating under the same name as the sole proprietorship. At all times relevant hereto, the operators of Valley Gun (namely, Sanford Abrams as sole proprietor and RSM) have been Federal Firearms Licensees ("FFLs"). RSM elected to maintain the pertinent records of the sole proprietorship so that, until March 2, 2000,[1] RSM was responsible for answering official inquiries seeking information from the sole proprietorship record.

Defendant Bradley A. Buckles is the Director of the Treasury Department's Bureau of Alcohol, Tobacco, and Firearms ("BATF"). BATF has been delegated the authority within the Department of the Treasury to administer and enforce the provisions of the Gun Control Act, Pub.L. No. 90–618, as amended by the Firearm Owners Protection Act of 1986, Pub.L. No. 99–308, presently codified at 18 U.S.C. §§ 921 *et seq.* *See* 37 Fed.Reg. 11696 (1972) (setting forth delegation of authority).

One of the key functions of BATF is to maintain and operate a Firearms Tracing System for the benefit of federal, state, and local law enforcement agencies. A law enforcement agency submits a Trace Request Form (ATF 3312.1) to BATF which provides pertinent identification information.[2] BATF then undertakes a trace, ideally by contacting the manufacturer, then the wholesaler, and then the FFL dealer

who sold the firearm. The FFL dealer is then required to provide information such as the identity, address, and license number of the purchaser from records the dealer is required to maintain. FFL dealers are required to respond to trace information requests within twenty-four hours of receipt. 18 U.S.C. § 923(g)(7). BATF operates on two "tracks" for firearm trace requests, seeking to complete the process and provide the requesting agency with trace information within twenty days for "normal" requests and twenty-four hours for "urgent" requests.

In recent years there have been some 200,000 (more or less) trace requests per year, of which approximately two percent are "urgent." Of the approximately 80,000 FFL dealers, some 1,000 have been involved in over half of the trace requests. BATF concluded that some FFLs were not being cooperative in connection with trace requests. BATF considered an "uncooperative" FFL dealer to be one who met one of the following criteria:

1. Refused to provide information
2. Provided false information
3. Was late (namely, more than twenty-four hours after request received) in providing a trace response.

Of those FFL dealers meeting the criteria, some forty-one were selected[3] to be subject to the procedure at issue herein.

BATF determined that RSM was "uncooperative" because it had, on three or more occasions in 1999, failed to respond to a trace request within twenty-four hours of receipt. The Court finds that, in fact, RSM did fail to provide timely responses within twenty-four hours of receipt.[4]

---

1. At this time, RSM elected to provide the pertinent records of the proprietorship to the Government for maintenance.

2. This information typically includes the identification of the firearm (manufacturer, model, serial number if available), the individual possessing or associated with the firearm if known, the recovery location, and the offense that brought the crime gun to the attention of law enforcement authorities.

3. An FFL, although meeting the "uncooperative" criteria, might not be selected if, for example, the local BATF office recommended against selection.

4. Even if BATF had the burden of proving lateness this finding would be made. The BATF records, with reasonable inferences drawn therefrom, taken together with RSM's response, establish, by a preponderance of the evidence, that RSM responded to trace re-

On February 12, 2000, BATF, by Forest G. Webb, Sr. ("Webb"), Special Agent in Charge at the National Tracing Center ("NTC") of BATF, sent RSM the letter ("the Demand Letter") at issue herein.

The Demand Letter states that the National Tracing Center of BATF has "experienced difficulty in obtaining firearms trace information" from RSM, and that RSM has "either refused to respond on at least one occasion, not responded within 24 hours on three or more occasions, or provided incorrect information in response to a crime gun trace request on at least one occasion." The Demand Letter states that RSM must complete a Form 4483[5] within thirty days[6] to report information on all firearms RSM had disposed of during the last three years. In addition, RSM is required to submit a Form 4483 on a monthly basis "until advised otherwise." *Id.* BATF intended to maintain the documents submitted by RSM at its National Tracing Center and enter, on an electronic database, certain of the information[7] contained thereon. At such time as RSM was determined no longer to warrant treatment as an "uncooperative" FFL, the hard copies of its submitted documents would be returned or destroyed; however, the information placed on the BATF electronic database would be retained.

On March 17, 2000, RSM, along with three anonymous individuals[8] who lawfully purchased firearms from RSM, filed this action seeking relief from the Demand Letter, including a preliminary and permanent injunction.

The Court conducted a preliminary injunction hearing on March 27, 2000 which, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, was deemed part of the trial of this action. The Court, with the agreement of the parties, set trial for April 4, 2000. Inasmuch as the extended due date for compliance with the Demand Letter is April 30, the Motion for Preliminary Injunction is moot. The case is being decided on the merits.

## II.   LEGAL PRINCIPLES

### A.   Standard of Review

Under the Administrative Procedure Act, the Court may review and set aside agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

The Supreme Court has developed a two-part test for determining whether an agency action exceeded its statutory authority and, therefore, should be set aside:

> When a court review an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. . . . [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the

---

quests more than twenty-four hours after receipt on three or more occasions in 1999.

**5.** Form 4483, entitled "Report of Firearms Transactions," requires information concerning the licensee (identification), the firearm (description, manufacturer, model, serial number, and type), the seller (name, address, and license number), and purchaser (name, address, date of birth, and license number). *See* Def's Ex. 1.

**6.** Later, the time for response was extended to April 30, 2000.

**7.** BATF did not intend to maintain an electronic database of the identities of purchasers of firearms.

**8.** These individuals use the pseudonyms of Jane Doe, John Doe I, and John Doe II to protect their identities. The Court concludes that the "Doe" plaintiffs either have no standing or, in any event, present claims that are completely duplicative of those presented by RSM.

agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Thus, an administrative agency's interpretation of a statute is not entitled to deference where it is contrary to the unambiguously expressed intent of Congress. *MCI Telecommunications Corp. v. AT & T,* 512 U.S. 218, 229, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994); *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992).

### B. *The Pertinent Statute*

Congress passed the Gun Control Act to regulate interstate firearms transactions, primarily with respect to licensing of federal firearms licensees.[9] BATF within the Department of the Treasury has been delegated the authority to promulgate regulations to enforce the Gun Control Act.

In 1986, Congress passed the Firearm Owners Protection Act ("the FOPA"),[10] which amended several provisions of the GCA. The FOPA, while preserving "the necessary statutory foundation for legitimate law enforcement efforts," was enacted to protect what Congress found to be legitimate interests of firearms owners. *See* S.Rep. No. 98–583, 98th Cong., 2d Sess. 1 (1984).[11]

As discussed herein, the instant case requires resolution of a conflict, or at least tension, between two provisions of the FOPA in the context of the Demand Letter. Section 923(g)(5) provides that FFLs must comply with letters issued by BATF requiring submissions of "all record information required to be kept" by FFLs. Section 926(a) provides that no rule or regulation prescribed after the enactment of the FOPA may require that any portions of the contents of records that FFLs are required to maintain be recorded at a government facility.

### III. *DISCUSSION*

It is, of course, well established that "[w]hen Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted." *Stark v. Wickard,* 321 U.S. 288, 309, 64 S.Ct. 559, 88 L.Ed. 733 (1944); *see also Lyng v. Payne,* 476 U.S. 926, 937, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986) ("[A]n agency's power is no greater than that delegated to it by Congress.").

In this case, the authority upon which BATF relied in issuing the Demand Letter appears in 18 U.S.C. § 923(g)(5), which provides:

> Each licensee shall, when required by letter issued by the Secretary, and until notified to the contrary in writing by the Secretary, submit on a form specified by the Secretary, for periods and at the times specified in such letter, all record information required to be kept by this chapter or such lesser record information as the Secretary in such letter may specify.

18 U.S.C. § 923(g)(5).

Section 923(g)(5) contains no limitations on the circumstances in which information can be requested from a licensee and no restrictions on the time frame of the information requested. Therefore, Defendant argues, the BATF's interpretation of Section 923(g)(5) to permit the issuance of the Demand Letter in this case is consistent with the GCA, is reasonable, and is entitled to deference. Def's Mem. at 27; *see also Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 403, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987).

---

9. Licensees may include importers, manufacturers, dealers, and collectors of firearms.

10. The FOPA is codified at 18 U.S.C. § 921 *et seq.* (1999).

11. There was no Senate Report on Pub.L. No. 99–308. S.Rep. No. 98–583 accompanied S. 914, the substantially similar predecessor to S.49, the Senate bill which was the basis for Pub.L. No. 99–308.

Section 923(g)(5) cannot be viewed in isolation but must be construed in light of the statutory scheme as a whole. *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1069 (D.C.Cir.1998) (statutory construction must look not to a single provision in isolation but "to the provisions of the whole law, and to its object and policy"). Under the FOPA scheme, BATF's record collection and maintenance authority is limited by 18 U.S.C. § 926(a), which provides, in relevant part:

> The Secretary may prescribe only such rules and regulations as are necessary to carry out the provisions of this chapter.... No such rule or regulation prescribed after the date of the enactment of the [FOPA] may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States ... nor that any system or registration of firearms, firearms owners, or firearms transactions or dispositions be established. Nothing in this section expands or restricts the Secretary's authority to inquire into the disposition of any firearm in the course of a criminal investigation.

18 U.S.C. § 926(a).

The Demand Letter purports to require RSM to transfer required records to a government facility, and the BATF intends to record a portion of the contents of such records at a government facility. Accordingly, if, as contended by RSM, the Demand Letter was issued pursuant to a rule or regulation prescribed after the enactment of the FOPA, it would be prohibited by Section 926(a).

The government contends that the Demand Letter was authorized by 27 C.F.R. § 178.126, which was promulgated *before* the enactment of the FOPA. Defs' Mem. at 29. Moreover, Defendant argues that Congress' codification of this regulation as part of the FOPA (see 18 U.S.C. § 923(g)(5)) is a clear indication that Congress did not intend that Section 926(a) would limit BATF's authority to request, receive, or compile information pursuant to Section 923(g)(5). *Id.*

The Government's reliance upon the pre-FOPA promulgation of the regulation is misplaced. The regulation is not reasonably read, and had not been used, to justify the collection of a specific FFL dealer's firearms transactions records and the maintenance of these records in a government facility. Instead, the regulation is reasonably read, and was used, to justify the gathering of industry and statistical information. Specifically, prior to the passage of the FOPA in 1986, demand letters pursuant to the regulation were used to obtain information, in the context of the Annual Firearms Manufacturing and Export Report, for purposes of statistical analyses. April 4, 2000, Testimony of Walfred Nelson; Def's Exs. 5–9. In sum, demand letters pursuant to the regulation were used pursuant to the National Firearms Act of 1934, 26 U.S.C. § 5841, but not for obtaining data on firearms transactions from licensees for inclusion in a government database. Def's Exs. 10–13.

The Demand Letter at issue, and the intended use of RSM's records by BATF, was not authorized by the subject regulation, or any rule or regulation promulgated prior to the enactment of the FOPA.

The Government's argument that the enactment of Section 923(g)(5) in FOPA constitutes Congressional approval of the Demand Letter, ignores the essential fact that Sections 923(g)(5) and 926(a) were enacted together and must be read together.

■ There is no doubt that BATF issued the Demand Letter with the intent to foster the performance of an important law enforcement function. There is no doubt that BATF's having on-site pertinent records of an "uncooperative" FFL could speed firearms tracing. Nevertheless, as stated by the Fourth Circuit in a similar context, although the Demand Letter program "may well be beneficial to BATF in

its efforts to track firearm dispositions," the program violates Section 926(a). *See National Rifle Association v. Brady*, 914 F.2d 475, 483–84 (4th Cir.1990).

The Government exaggerates when contending that the application of Section 926(a) to the Demand Letter will eviscerate BATF's ability to enforce firearms laws. Def's Mem. at 31–32. Under the GCA, BATF retains the authority to inspect the records on the premises of a licensee to ensure compliance with record-keeping requirements. *See* 18 U.S.C. § 923(g). Moreover, under Section 927(g)(7) of the Gun Control Act, BATF may require the FFLs to respond to tracing requests within twenty-four hours "in the course of a bona fide criminal investigation." 18 U.S.C. § 923(g)(7). *See also* 18 U.S.C. § 923(g) (BATF is authorized to inspect records (i) in a criminal investigation of person other than the licensee, (ii) for ensuring compliance with statutory requirements "with respect to records relating to a firearm involved in a criminal investigation that is traced to the licensee," and (iii) when "required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation").

If RSM was derelict in its compliance with its twenty-four hour response duty, BATF could have, and presumably can, take steps to impose appropriate sanctions,[12] including, perhaps potential license revocation. BATF cannot, however, punish RSM by imposing a requirement that violates Section 926(a) of FOPA.

Since the Court reaches its conclusion as a matter of statutory construction, it is not necessary to address Plaintiff's contention of alleged Constitutional violations.

## IV.  *CONCLUSION*

For the foregoing reasons:

1.  Plaintiff RSM, Inc.'s request for a declaratory judgment and injunctive relief shall be GRANTED.

2.  The Treasury Department's Bureau of Alcohol, Tobacco, and Firearms shall be enjoined from seeking to enforce its February 7, 2000 Demand Letter issued to RSM, Inc.

3.  Inasmuch as the Government has presented reasonable, albeit not persuasive, arguments, the parties shall bear their own respective costs.

SO DECIDED THIS 13th DAY of April, 2000.

---

**12.**  Subject, of course, to the rights of RSM.