**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

RSM, INCORPORATED, d/b/a Valley
Gun of Baltimore; SANFORD
ABRAMS; JANE DOE; JOHN DOE, I;
JOHN DOE, II,

　　　　　*Plaintiffs-Appellees,*

　　　　　v.

BRADLEY A. BUCKLES, Director,
Bureau of Alcohol, Tobacco and
Firearms,

　　　　　*Defendant-Appellant.*

No. 00-1777

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-00-759-MJG)

Argued: January 24, 2001

Decided: June 6, 2001

Before WILKINSON, Chief Judge, and WIDENER and
WILLIAMS, Circuit Judges.

Reversed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Widener and Judge Williams joined.

## COUNSEL

**ARGUED:** Michael Scott Raab, Appellate Staff, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,

D.C., for Appellant. Stephen Porter Halbrook, Fairfax, Virginia, for Appellees. **ON BRIEF:** David W. Ogden, Assistant Attorney General, Lynne A. Battaglia, United States Attorney, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Imelda M. Koett, Associate Chief Counsel, Abigail Roth, Office of the Chief Counsel, BUREAU OF ALCOHOL, TOBACCO & FIREARMS, Washington, D.C., for Appellant. Christopher A. Conte, Frederick, Maryland, for Appellees.

---

## OPINION

WILKINSON, Chief Judge:

Plaintiffs challenge a Bureau of Alcohol, Tobacco, and Firearms ("BATF") letter requiring federal firearms licensees to submit certain record information to BATF. The district court held that the letter violated Section 106 of the Firearms Owners' Protection Act of 1986, 18 U.S.C. § 926(a) (1994). *RSM, Inc. v. Buckles*, 94 F. Supp. 2d 692 (D. Md. 2000). Because BATF's issuance of the letter was limited to federal firearms licensees who had violated federal law in failing to comply with firearms trace requests, we must reverse the judgment.

I.

Pursuant to the Gun Control Act of 1968, as amended, the Bureau of Alcohol, Tobacco, and Firearms operates a firearms tracing system. The system is designed to assist law enforcement agencies in criminal investigations. A firearms trace typically begins when a law enforcement agency submits a trace request to BATF after recovering a firearm from a crime scene or from a suspect. BATF then tracks the movement of the weapon through the chain of distribution to the federal firearms licensee ("FFL") who ultimately sold the firearm to the retail purchaser. When BATF initiates a trace request, FFLs are required to provide information such as the purchaser's name, address, and federal firearms license number. FFLs are also required to respond to BATF trace requests within 24 hours. *See* 18 U.S.C. § 923(g)(7); 27 C.F.R. § 178.25a (2000).

In February 2000, BATF adopted new internal procedures because some FFLs were not adequately complying with its trace requests. First, BATF developed a definition of "uncooperative" FFLs. The definition included those FFLs who, in 1999: (1) failed to respond to a firearms trace request on at least one occasion; (2) failed to respond to a trace request within 24 hours on three or more occasions; or (3) provided incorrect information in response to a request. BATF then issued "demand letters" to the 41 FFLs whom BATF deemed to be uncooperative. The FFLs receiving these letters constituted less than .1 percent of all the 80,000 FFLs nationwide. The letters required the 41 FFLs to submit information concerning their firearms purchases and sales for the past three years, and on a monthly basis thereafter. The information requested included a description of the firearms including the models, serial numbers, and types, as well as the purchasers' names, addresses, and federal firearms license numbers.

BATF saved the record information that it received from FFLs pursuant to its letters. With the exception of the purchaser's name, BATF also entered all the information into an electronic database. If BATF determined that an uncooperative FFL had become cooperative, BATF would destroy the hard copies of the record information. However, BATF continued to save the information in its electronic database.

On February 7, 2000, BATF issued a letter to RSM, Inc., d/b/a Valley Gun of Baltimore ("Valley Gun"). BATF contended that Valley Gun had repeatedly failed to comply in a timely manner with BATF trace requests. In response, plaintiffs filed this action against the Director of BATF seeking declaratory and injunctive relief. Plaintiffs included Valley Gun, Valley Gun's owner, and three anonymous individuals who lawfully purchased firearms from Valley Gun. Plaintiffs alleged that the demand letter exceeded the scope of BATF's statutory authority and also violated their Fourth and Fifth Amendments rights. In addition, plaintiffs claimed that the letter was invalid because it had been issued by an official who lacked authority to do so.

On April 13, 2000, after a bench trial, the district court permanently enjoined BATF from seeking to enforce its letter. *See RSM*, 94 F. Supp. 2d at 697. The court found that RSM failed to timely comply with trace requests on three or more occasions in 1999. *Id.* at 693 n.4.

The court held, however, that the letter violated Section 106 of the Firearms Owners' Protection Act of 1986, 18 U.S.C. § 926(a). *Id.* at 696-97. BATF now appeals.

## II.

Congress passed the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, to regulate interstate firearms transactions. *See National Rifle Ass'n v. Brady*, 914 F.2d 475, 477 (4th Cir. 1990). Among other things, the Act requires that importers, manufacturers, and dealers of firearms obtain a federal license in order to operate. *See* 18 U.S.C. §§ 922(a)(1), 923(a). Under the Act, the licensee must maintain all records of firearms transactions as required by federal regulation. The regulations are prescribed either by the Secretary of the Treasury or the Secretary's delegates, including BATF officials. *See* 18 U.S.C. § 923(g).

In December 1968, the Department of the Treasury issued regulations designed to implement the Gun Control Act's record keeping requirements. In particular, section 178.126(a) requires licensees, when requested by letter, to submit the relevant record information to BATF. *See* 27 C.F.R. § 178.126(a).[1]

In 1986, Congress enacted the Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 ("FOPA"), to amend several provisions of the Gun Control Act. FOPA was intended to reduce the regulatory burden on law-abiding firearms owners without incapacitating

---

[1]27 C.F.R. § 178.126(a) states, in relevant part:

Each licensee shall, when required by letter issued by the Director of Industry Operations, and until notified to the contrary in writing by such officer, submit on Form 4483, Report of Firearms Transactions, for the periods and at the times specified in the letter issued by the Director of Industry Operations, all record information required by this subpart, or such lesser record information as the Director of Industry Operations in his letter may specify.

Section 178.126(a) originally used the term "Assistant Regional Commissioner" instead of "Director of Industry Operations." The current regulation is otherwise identical to the version prescribed in 1968.

BATF's ability to combat violations of the firearms laws. *See Brady*, 914 F.2d at 477. Two provisions of FOPA are relevant to this case. First, FOPA enacted section 923(g)(5)(A), which essentially codified 17 C.F.R. § 178.126(a). *See* 18 U.S.C. § 923(g)(5)(A).[2] Like the regulation, section 923(g)(5)(A) obliges each federal firearms licensee, when required by letter, to submit record information to BATF. *See id.*

Second, FOPA amended section 926(a) to limit the Secretary's ability to pass regulations creating a registry of firearms. *See* 18 U.S.C. § 926(a).[3] The amendment provides that BATF may not prescribe any "rule or regulation" after the enactment of FOPA requiring firearms records to "be recorded at or transferred to a facility owned, managed, or controlled by the United States." *Id.* The amendment also prevents BATF from prescribing rules or regulations which require "that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established." *Id.*

---

[2]18 U.S.C. § 923(g)(5)(A) provides, in relevant part:

Each licensee shall, when required by letter issued by the Secretary, and until notified to the contrary in writing by the Secretary, submit on a form specified by the Secretary, for periods and at the times specified in such letter, all record information required to be kept by this chapter or such lesser record information as the Secretary in such letter may specify.

[3]18 U.S.C. § 926(a) provides, in relevant part:

The Secretary may prescribe only such rules and regulations as are necessary to carry out the provisions of this chapter. . . . No such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act [May 19, 1986] may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States . . . nor that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established. Nothing in this section expands or restricts the Secretary's authority to inquire into the disposition of any firearm in the course of a criminal investigation.

### III.

### A.

### 1.

Plaintiffs' principal argument is that BATF's letter exceeds the scope of its authority under section 923(g)(5)(A) and violates the limitations set forth in section 926(a).

Section 923(g)(5)(A) grants BATF some limited amount of authority to secure record information from FFLs. *See* 18 U.S.C. § 923(g)(5)(A). That provision states:

> Each licensee shall, when required by letter issued by the Secretary, . . . submit on a form specified by the Secretary, . . . all record information required to be kept by this chapter.

*Id.* Likewise, 27 C.F.R. § 178.126(a) recognizes BATF's authority to issue letter requests. That regulation provides:

> Each licensee shall, when required by letter issued by the Director of Industry Operations, . . . submit on Form 4483, Report of Firearms Transactions, . . . all record information required by this subpart, or such lesser record information as the Director of Industry Operations in his letter may specify.

BATF contends that unless some other statutory provision narrows the scope of 18 U.S.C. § 923(g)(5)(A) and 27 C.F.R. § 178.126(a), these provisions would permit BATF to issue the letter in this case. Plaintiffs suggest several possible limitations. Their primary argument is that BATF's demand letter violates section 926(a)'s prohibitions against the transfer of firearms records to a federal facility and the establishment of "any system of registration of firearms." 18 U.S.C. § 926(a).

By its plain text, however, section 926(a) does not directly limit BATF's authority under either 18 U.S.C. § 923(g)(5)(A) or 27 C.F.R.

§ 178.126. Section 926(a)'s prohibitions apply only to a "*rule or regulation* prescribed *after* the date of the enactment of the Firearms Owners' Protection Act.*" 18 U.S.C. § 926(a) (emphasis added). Section 923(g)(5)(A) is a statute, not a rule or regulation. Likewise, while 27 C.F.R. § 178.126 is a regulation, it was prescribed in 1968, long *before* the enactment of FOPA in 1986.

The district court was cognizant of this fact but believed that BATF had never before interpreted the regulation to permit BATF to issue letters such as those in this case. *See RSM*, 94 F. Supp. 2d at 696. BATF in turn presented substantial evidence that it interpreted 27 C.F.R. § 178.126 to permit it to issue letters to noncompliant FFLs as far back as 1968. However, this dispute does nothing to change the fact that section 926(a)'s limitation is triggered by the date on which the rule or regulation was "prescribed." *See* 18 U.S.C. § 926(a). Because 27 C.F.R. § 178.126 was prescribed in 1968, and because the regulation grants BATF authority to issue the letters regardless of whether BATF has previously exercised that authority, section 926(a) does not directly foreclose BATF's authority to issue the letter. However, as discussed below, the statute does not grant BATF an unbounded delegation of authority to request record information.

2.

Plaintiffs next argue that section 923(g) requires BATF letters to be in relation to a bona fide criminal investigation. They contend that since BATF's letter to Valley Gun is not required for determining the disposition of firearms in the course of a particular criminal investigation, the letter is invalid. To support their interpretation of the statute, plaintiffs point to section 923(g)(7), which requires FFLs to respond within 24 hours to a request for record information "as may be required for determining the disposition of 1 or more firearms in the course of a bona fide criminal investigation." 18 U.S.C. § 923(g)(7).

Section 923(g)(7), however, does not automatically prevent BATF from issuing such letters under section 923(g)(5)(A). Section 923(g)(7) does not purport either to address or restrict BATF's section 923(g)(5)(A) authority to issue letters. Instead, it establishes the duties of FFLs when they receive a trace request. There is no dispute that the trace requests BATF originally submitted to Valley Gun were

"in the course of a bona fide criminal investigation." *See* 18 U.S.C. § 923(g)(7). Valley Gun cannot invoke its failure to comply with those original requests as a reason for limiting BATF's separate authority to issue a letter under section 923(g)(5)(A).

Plaintiffs also point to section 923(g)(1)(B). That section authorizes the Secretary to physically inspect FFLs' records "when such inspection or examination may be required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation." 18 U.S.C. § 923(g)(1)(B)(iii). BATF's authority to issue a letter under section 923(g)(5)(A), however, is not per se foreclosed by section 923(g)(1)(B)'s prohibition on inspecting records. The statutory scheme makes clear that section 923(g)(1)(B) is aimed at preventing warrantless, on-site searches of FFLs' records. In contrast, issuance of a letter under section 923(g)(5)(A) does not involve the entry of BATF agents onto an FFL's premises. Rather, it requires FFLs to send certain information contained in their records to BATF.

3.

While the above provisions cited by plaintiffs do not directly prohibit BATF's issuance of the letter in this case, it is equally clear that section 923(g)(5)(A) is not a limitless delegation of authority to BATF to request record information. Section 923(g)(5)(A) does not explicitly state the purposes for which the Secretary may issue letters. Other provisions of the statute, however, make clear that section 923(g)(5)(A) cannot be construed in an open-ended fashion. For instance, section 923(g)(1)(A) provides that FFLs "shall not be required to submit to the Secretary reports and information with respect to such records and the contents thereof, *except as expressly required by this section*." 18 U.S.C. § 923(g)(1)(A) (emphasis added). Section 923(g)(1)(A)'s express limitation on the Secretary's authority would be nullified if section 923(g)(5)(A) were interpreted to permit the Secretary to issue demand letters *for any purpose*. Likewise, while section 926(a) does not directly prohibit BATF's issuance of the letter in this case, that provision clearly demonstrates Congress' concern about any attempt by BATF to establish a national firearms registry. Section 926(a) would be rendered meaningless if BATF could issue limitless demand letters under section 923(g)(5)(A) in a backdoor

effort to avoid section 926(a)'s protections for law-abiding firearms owners. Congress clearly did not intend such a result.

It is unnecessary in this case, however, to delineate the precise scope of BATF's authority to issue letters to FFLs. Our holding here is a limited one. In this case, BATF issued its letter in response to findings that a small number of FFLs were routinely failing to comply with lawful BATF trace requests in criminal investigations. BATF narrowly-tailored the request to its tracing needs by issuing the letter only to the .1 percent of FFLs nationwide who failed to comply with statutory trace requests. *See* 18 U.S.C. § 923(g)(7). In addition, BATF will terminate these 41 FFLs' obligations once they comply with federal law and cease to hamstring BATF's criminal investigations. Nothing in the relevant statutory framework suggests to us that letters which are narrowly-tailored to facilitate BATF's trace-request authority in criminal investigations run afoul of BATF's authority under section 923(g)(5)(A) to issue appropriate requests for record information. While we are not free to ascribe to section 923(g)(5)(A) an open-ended reach, neither are we at liberty to eliminate altogether its positive grant of authority.

## B.

Plaintiffs further contend that section 923(g)(5)(A) is restricted by an appropriations rider to Pub. L. No. 106-554, 114 Stat. 2763 (2000). The rider prohibits the expenditure of appropriated funds for salaries or administrative expenses "in connection with consolidating or centralizing, within the Department of the Treasury, the records, or any portion thereof, of acquisition and disposition of firearms maintained by Federal firearms licensees." Pub. L. No. 106-554, 114 Stat. 2763 (2000). The rider has been reenacted annually since 1978. It was first passed in response to a proposed BATF regulation which would have required all FFLs to submit a quarterly report of all of their firearms dispositions. *See* 43 Fed. Reg. 11,800-02 (March 21, 1978). Congress was alarmed by BATF's attempt to secure the records of all FFLs nationally and the accompanying invasion of lawful firearms owners' privacy. *Id.* Plaintiffs propose that the appropriations rider now be read broadly to serve as an absolute prohibition against any collection of firearms records.

Congress has amended the Gun Control Act several times, most notably with FOPA, since it originally passed the appropriations rider in 1978. *See*, *e.g.*, FOPA, 100 Stat. at 449 (1986); Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 2013. Were we to adopt plaintiffs' view of the rider, it would render several provisions of FOPA inoperative. *See Colautti v. Franklin*, 439 U.S. 379, 392 (1979) (it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative"). When it passed FOPA, Congress clearly envisioned some sort of collection of firearms records, so long as it was incidental to some other statutory function specifically delegated to BATF. For example, some small collection of records occurs when FFLs comply with 18 U.S.C. § 923(g)(3)(A) by forwarding to BATF reports of multiple firearms sales to an unlicensed individual. Likewise, some collection of records occurs when FFLs who are closing their businesses comply with 18 U.S.C. § 923(g)(4) and forward their records to BATF.

As with these examples, some limited collection of records occurs when BATF issues a letter to FFLs who have not complied with BATF's trace requests. In such cases, the collection of information is directly tied to BATF's statutory tracing function. It is a very far cry from the creation of a national firearms directory. The letter here was issued under 18 U.S.C. § 923(g)(5)(A), and then only to the .1 percent of FFLs nationwide who failed to cooperate with BATF's gun trace requests under 18 U.S.C. § 923(g)(7). There is no evidence that the letter served as a ruse to avoid FOPA's prohibition against the creation of a national firearms registry. In light of the narrow scope of the demand letter and its direct relationship to BATF's explicit statutory duties to conduct trace requests in particular criminal investigations, there was no statutory violation.

## C.

Plaintiffs also argue that the letter was invalid because it was issued by the National Tracing Center, which allegedly lacked authority to do so. The Secretary of the Treasury properly delegated his authority to administer 18 U.S.C. § 923(g)(5)(A) to BATF's Director of Industry Operations. *See* 27 C.F.R. § 178.126(a). In an internal memorandum, the BATF Director further delegated this authority to

the National Tracing Center. Plaintiffs contend that this subsequent delegation was improper because the Director's memorandum was a "rule or regulation" subject to the notice-and-comment rulemaking requirements of section 926(b). *See* 18 U.S.C. § 926(b) (stating that before prescribing rules and regulations the Secretary must notify the public and provide an opportunity for a hearing).

BATF is not required, however, to engage in notice-and-comment rulemaking in order to internally delegate its authority. Section 926(b) does not define the term "rule or regulation." Plaintiffs suggest that section 926(b) implicitly incorporated the Administrative Procedure Act's (APA) broad definition of the term. *See* 5 U.S.C. § 551(4). Even assuming the memorandum would qualify as a rule within the meaning of the APA, however, the APA provides that "rules of agency organization, procedure, or practice" are exempt from the general notice-and-comment requirements of section 553. *See* 5 U.S.C. § 553(b)(A). The exception applies to "agency actions that do not themselves alter the rights or interests of parties, although [they] may alter the manner in which the parties present themselves or their viewpoints to the agency." *JEM Broadcasting Co. v. F.C.C.*, 22 F.3d 320, 326 (D.C. Cir. 1994) (internal citations omitted); *see also City of Alexandria v. Helms*, 728 F.2d 643, 647-48 (4th Cir. 1984) (holding that notice-and-comment rulemaking is required only if the rule "makes a substantive impact on the rights and duties of the person subject to regulation"). To the extent that Congress intended section 926(b) to incorporate the APA's definition of "rule," there is little reason to believe that it did not also intend to incorporate the APA's exception for "rules of agency organization, procedure, or practice." *See* 5 U.S.C. § 553(b)(A).

Here the delegation to the National Tracing Center did not alter any of plaintiffs' substantive rights. Valley Gun was already on notice that it would have to respond to letters when requested by the Secretary or his delegates to do so. *See* 18 U.S.C. §§ 923(g)(5)(A) & 921(a)(18). Rather, the delegation merely affected which BATF agent would issue the letter. BATF need not engage in notice-and-comment-rulemaking each time it delegates authority within its own ranks.

D.

Plaintiffs finally contend that the issuance of the letter was an unreasonable search and seizure under the Fourth Amendment.[4] BATF's letter is analogous to an administrative subpoena. The requirements for enforcing an administrative subpoena "are not onerous." *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996). The Fourth Amendment requires simply that administrative subpoenas for corporate books or records must be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (*quoting See v. City of Seattle*, 387 U.S. 541, 544 (1967)). BATF's letter satisfies these requirements. Both 18 U.S.C. § 923(g)(5)(A) and 27 C.F.R. § 178.126(a) grant BATF authority to issue letters. Furthermore, the letter specifically informed its recipients what information BATF required. In addition, an FFL's obligation to provide record information to BATF will expire once the FFL has assured BATF of future compliance with statutory trace requests. Finally, an FFL has recourse against an unreasonably burdensome letter by raising objections to it in a district court before suffering any penalties for noncompliance. *See Lone Steer*, 464 U.S. at 415.

IV.

Whether the investigative benefits of BATF's requests for information outweigh the reporting burdens is a matter for legislative judgment. The statutory mission is for Congress to set forth, and the potential for abuse is for Congress to proscribe. It is clear that Congress did not intend to give BATF carte blanche with regard to informational requests from federal firearms licensees. However, BATF's letter in this case was narrowly tailored to a specific grant of positive statutory authority.

---

[4]Plaintiffs also raised a Fifth Amendment claim in the proceedings below, arguing that the demand letter subjected Valley Gun to punishment without due process of law. Plaintiffs' brief fails to mention the Fifth Amendment claim, however, and in all events there is no Fifth Amendment violation.

For that reason, the judgment is reversed and the injunction vacated.

*REVERSED*